UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TYRONE METCALFE, | ) | NO. EDCV 07-1039 AGR |
| Plaintiff, | ) | |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION AND ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Tyrone Metcalfe filed this action on August 17, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on May 20 and 21, 2008. On June 3, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On February 7, 2005, an application for supplemental security income benefits was filed on behalf of Metcalfe, who was a minor at the time of filing but attained the age of 18 in July 2006. A.R. 12, 16. The application was denied initially and upon reconsideration. A.R. 12. The Administrative Law Judge ("ALJ") conducted a hearing on February 1, 2007, at which Metcalfe, a medical expert, and a vocational expert testified. A.R. 151-172. On February 23, 2007, the ALJ issued a decision denying benefits. A.R. 9-24. Metcalfe requested review. A.R. 6. On July 17, 2007, the Appeals Council denied Metcalfe's request for review. A.R. 3-5.

This lawsuit followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Pertinent Legal Standards

### 1. Adult Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

### 2. Child Definition of Disability

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(C)(i).[1] An impairment is "marked and severe" if it meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix I. 20 C.F.R. § 416.924(d)(1). A claimant "meets" a listed impairment if the claimant's impairment matches the listed impairment. *Id.* A claimant "medically equals" the listed impairment by demonstrating medical findings that are of equal medical significance to the listed impairment. 20 C.F.R. § 416.926(b). A claimant "functionally equals" a listed impairment by showing either a marked limitation in two functional domains (out of six) or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a); *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d

---

[1] "[N]o individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." 42 U.S.C. § 1382c(C)(ii).

1001, 1004 (9th Cir. 2006). The six domains are acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi). A marked limitation is more than moderate and less than extreme, and occurs when an impairment(s) "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation occurs when an impairment(s) "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

### B. The ALJ's Findings

Before reaching the age of 18, Metcalfe had the severe impairments of social phobia and reactive depression. A.R. 16. However, Metcalfe did not have an impairment that met, medically equaled, or functionally equaled a listing. *Id.*

After reaching the age of 18, Metcalfe had the following severe impairments: social phobia, depressive disorder not otherwise specified, and personality disorder not otherwise specified with avoidant features. A.R. 23. Metcalfe had no physical limitations. *Id.* "Mentally, the Claimant is able to understand and remember moderately detailed instructions, and is able to carry out moderately complex tasks. His work should be independent, allowing for occasional non-intense interactions with coworkers and no interaction with the general public." *Id.* Metcalfe has no past relevant work but should be able to perform various jobs, including cleaner and library page. A.R. 23-24.

### C. The Medical Records

Metcalfe argues that, when he was under the age of 18, he had marked limitations in two domains, acquiring and using information,[2] and interacting and

---

[2] Acquiring and using information involves how well a child acquires or learns information, and how well a child uses the information he or she has learned. 20 C.F.R. § 416.926a(g); *Id.* § 416.926a(g)(2)(v) (description for adolescents age 12 until age 18).

4

relating to others.³  JS 4.  According to Metcalfe, the ALJ erred in finding that, before Metcalfe reached the age of 18, he had "no limitation in acquiring and using information" (A.R. 19), and had "less than marked limitation in interacting and relating to others" (A.R. 21).  In support of his argument, Metcalfe points to the facts that he repeated the 9th grade, completed high school via online courses, and had low Global Assessment of Functioning ("GAF") scores in March and April 2004.  JS 4-5; A.R. 149, 150.

The ALJ noted that the medical records were "sparse."  A.R. 18.  The ALJ stated that he considered the complete medical history even though benefits were not payable until the month following the month in which the application was filed, February 7, 2005.  A.R. 12.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician.  *Orn*, 495 F.3d at 631.  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* at 632 (citations and internal quotation marks omitted).

The ALJ addressed the records in Exhibit 5F.⁴  Nevertheless, Metcalfe argues that the ALJ erred in failing to mention his GAF of "35 50" on April 30, 2004, and "30/50" on March 21, 2004.  A.R. 149-150.  An ALJ's failure to

---

³ Interacting and relating to others involves initiating and responding to exchanges with other people for practical or social purposes, and forming relationships with family members and friends, and sustaining those relationships over time.  20 C.F.R. § 416.926a(i)(1)(i)-(ii); *Id.* § 416.926a(i)(2)(v) (description for adolescents age 12 until age 18).

⁴ The ALJ mistakenly identified the records as being from Kaiser Permanente.  A.R. 18.  They are from Dogon Community Services.  A.R. 105, 148.  The Kaiser Permanente records are Exhibit 4F and cover a shorter time period.  A.R. 135-141.

5

reference a GAF, standing alone, does not constitute legal error. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting argument that ALJ erred in failing to mention GAF score).[5]  A GAF is not determinative of mental disability for social security purposes. *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings.").

Here, the forms do not indicate any basis for a GAF score of 30-50 even in March/April 2004 (which precedes the time frame for benefits).[6]  A.R. 149-150. As the ALJ acknowledged, the notes in January 2005 indicate Metcalfe was "doing real good in school."[7]  A.R. 18, 145.  In March 2005, the notes indicate that Metcalfe appears bright but does not use his mental capabilities. A.R. 18, 144. In April 2005, Metcalfe was "considering computer design as a future education beyond high school." A.R. 18, 142.  Accordingly, contrary to Metcalfe's argument, these records do not support a marked limitation in acquiring and using information.

---

[5] *See also McFarland v. Astrue*, Case No. 06-35549, 2008 U.S. App. LEXIS 16011 at *3 (9th Cir. July 25, 2008) (unpublished).

[6] Based on a Mental Status Exam, Metcalfe's mood was euthymic, his affect was normal, he was alert, fully oriented, and had "ok" judgment. A.R. 148. He had no hallucinations or delusions, no suicidal ideation, and his response to medication treatment was "pretty good." *Id.*  By contrast, a GAF of 30 indicates behavior considerably influenced by delusions or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas.  A GAF of 31-40 indicates some impairment in reality testing or communications or major impairment in several areas.  A GAF of 41-50 denotes serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. 2000) ("DSM-IV").

[7] Like the ALJ, the Court reads the December 2004 notes to relate to Metcalfe only insofar as they state he is attending school by computer and has very poor self esteem. A.R. 18, 146.  The remainder of the notes appear to relate to a female with different symptoms. A.R. 146.

6

1 | Metcalfe also testified at the hearing that he was doing "pretty good" in online
2 | school. A.R. 158.
3 |     Metcalfe also points to a GAF of 55 on October 11, 2006. JS 5; A.R. 141.
4 | A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and
5 | circumstantial speech, occasional panic attacks OR moderate difficulty in social,
6 | occupational, or school functioning (e.g., few friends, conflicts with peers or co-
7 | workers)." DSM-IV at 34. Because a marked limitation requires "more than
8 | moderate" limitations, 20 C.F.R. § 416.926a(e)(2), a GAF of 55 does not support
9 | Metcalfe's argument that he had marked limitations in two domains.[8] Particularly
10 | when, as here, the GAF is consistent with the ALJ's findings, failure to mention a
11 | GAF score is not, standing alone, legal error. Although the ALJ did not mention
12 | the GAF score in his decision, the Court notes that the ALJ questioned the
13 | medical expert about it. The medical expert responded that the GAF is not
14 | inconsistent with his findings. A.R. 168.
15 |     Finally, the ALJ took into account the undisputed facts that Metcalfe had to
16 | repeat the 9th grade due to social phobia and went to high school online. A.R.
17 | 17. These facts, however, do not establish a marked limitation in acquiring and
18 | using information.
19 |     The ALJ relied on the opinions of an examining physician (A.R. 18, 116-
20 | 118), a medical expert (A.R. 18, 162-169), and State agency nonexamining
21 | physicians (A.R. 18, 119-124, 127-132). The ALJ also addressed the reports
22 | completed by Metcalfe's stepfather and mother on June 24, 2005. A.R. 18, 87-
23 | 95, 96-103. Metcalfe could take care of himself, cook meals for himself, and do
24 | chores. A.R. 88-89. Metcalfe's mother reported that Metcalfe "pays attention
25 | well," "can usually follow spoken instructions," and "handles stress as well as

---

[8] Moreover, the GAF was assessed by a licensed clinical social worker, who is not an acceptable medical source. 20 C.F.R. § 416.913(a).

1  anyone else." A.R. 101-102. These records do not support a marked limitation in
2  acquiring and using information.
3      Thus, even assuming that Metcalfe had marked limitations in interacting
4  and relating to others, the ALJ did not err in finding that Metcalfe did not have
5  marked limitation in acquiring and using information.

### D.     Credibility of Claimant and His Parents

7      The ALJ's RFC included a limitation that "work should be independent,
8  allowing for occasional non-intense interactions with coworkers and no interaction
9  with the general public." A.R. 23.
10      Metcalfe argues that the ALJ necessarily rejected statements by Metcalfe,
11  his mother and his stepfather. JS 13. "To determine whether a claimant's
12  testimony regarding subjective pain or symptoms is credible, an ALJ must
13  engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36
14  (9th Cir. 2007). First, "the ALJ must determine whether the claimant has
15  presented objective medical evidence of an underlying impairment 'which could
16  reasonably be expected to produce the pain or other symptoms alleged.'" *Id.*
17  (citations omitted). The ALJ found that Metcalfe's medically determinable
18  impairments could reasonably be expected to produce the alleged symptoms.
19  A.R. 18.
20      "Second, if the claimant meets this first test, and there is no evidence of
21  malingering, 'the ALJ can reject the claimant's testimony about the severity of her
22  symptoms only by offering specific, clear and convincing reasons for doing so.'"
23  *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility
24  determination, the ALJ 'must specifically identify what testimony is credible and
25  what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464
26  F.3d 968, 972 (9th Cir. 2006) (citation omitted).
27      The ALJ addressed the statements of Metcalfe and his parents. A.R. 17-
28  19. He did not reject their statements. *Id.* When Metcalfe was under the age of

18, the ALJ found that Metcalfe had the severe impairments of social phobia and reactive depression. A.R. 16. Due to his impairments, Metcalfe "ditched" school and had to repeat the 9th grade. A.R. 17, 156-157. He attended high school through online courses. A.R. 17. While Metcalfe was a minor, his mother and stepfather submitted written questionnaires indicating that Metcalfe would not go out of the house and attend school. The ALJ noted that the stepfather said Metcalfe generally "did not go out in public" and "was fearful of going outside the house alone." A.R. 18. The ALJ also noted that the mother said that Metcalfe "did not go out alone." A.R. 19. This evidence formed part of the basis of the ALJ's assessment that Metcalfe had less than marked limitation in interacting and relating to others as a minor. A.R. 21.

The issue here, however, is whether Metcalfe was capable of work after attaining the age of 18. On this question, the ALJ relied on Metcalfe's testimony at the hearing, when Metcalfe was 18 years old. A.R. 17-18. Metcalfe testified that he would graduate in June 2007 and had recently obtained a driver's license. A.R. 154-155. He testified that he was very familiar with computers and devoted about seven hours per day to online high school. A.R. 157-158. He went outside of the home to pick up books and take certain tests that were not available on computer. He did pretty well on those tests. A.R. 158. He enjoyed playing video games and designing web pages. A.R. 160. He went to friends' houses to visit. *Id.* He went to the movies with a friend about once every two months "when there's maybe one really good movie out that I want to go see." A.R. 160-161. He also did chores around the house. A.R. 159-160. The ALJ relied on a treatment record which reported that Metcalfe was considering computer design as future education beyond high school. A.R. 18, 142.

The ALJ also relied on the medical expert's testimony. A.R. 18. The medical expert testified: "This is basically, his problems are with the public. You know, he's a functioning young man. He's having an aspiration to work as a

9

computer-based person. It is perfectly fit (sic) for him." A.R. 168. The medical expert explained that he assessed moderate limitations because "[h]e's okay with people [inaudible], goes to the movies, for example, some difficulty and some pain associated with it but he's still able to manage it. He goes and visits his friends so he's not an isolate (sic)." A.R. 169. The medical expert recommended no interaction with the public, which the ALJ accepted. *Id.* The medical expert also distinguished the school environment, which has a "not very kind population there," "especially at his age." *Id.*

The Court cannot say that the ALJ's interpretation of the evidence, viewed as whole, as to Metcalfe's residual functional capacity after attaining the age of 18 is not reasonable or supported by substantial evidence. Metcalfe does not point to any contrary statements or medical records after Metcalfe reached the age of 18.[9] When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## ORDER

IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 29, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[9] The Court notes that the only statements by Metcalfe's mother after he reached age 18 were reported by a licensed social worker at Kaiser (who assessed a GAF of 55 as discussed above). According to the notes, Metcalfe's mother said that, at 18, Metcalfe "talks of wanting to drive, move out." A.R. 136. Also, Metcalfe thinks of maybe being a "video game designer or go to college." A.R. 137. He "doesn't fear leaving the house, fears crowds." *Id.* School is the worst. *Id.* These statements are not inconsistent with the hearing testimony of the medical expert and Metcalfe.